## Case No. 14,225.

TUCKER et al. v. OELRICHS et al.

[36 Hunt, Mer. Mag. 325.]

Circuit Court, D. Maryland. Nov. Term, 1856.

WAREHOUSEMEN—INJURY TO COFFEE FROM GUANO —NEGLIGENCE.

[In order to make warehousemen liable for discoloration of coffee stored with them, arising from the storage of guano in the same building, it must be shown that they were wanting in ordinary diligence in so storing the two articles together.]

This suit was brought by the plaintiffs [R. & H. B. Tucker], merchants, of Baltimore, against the defendants [Oelrichs, Lurman, and Schumacker] as owners of Belt's wharf and the warehouses thereon, to recover for the injury alleged to have been done to a lot of coffee belonging to the plaintiffs, by storing it in the same warehouse with a quantity of Peruvian guano. It appeared, upon the trial, that the coffee was imported by Messrs. Oelrichs & Lurman in the summer of 1852, and stored by them in one of their warehouses on Belt's wharf; that they sold it in the fall of 1853 to the Messrs. Tucker, who continued it in store in the same place until the fall of 1854, when, on being sampled, it was found to be in part discolored, and therefore considerably injured in value. It was sold at auction, on notice given to the defendants, at a loss; and this suit was then brought to recover to the extent of the injury. On the part of the plaintiffs, merchants of the city were called, who expressed the opinion that the discoloration of the coffee was the effect of guano; and that it was not, in their judgment, a prudent act in the storekeeper to put guano in the same house with coffee. The same opinion was expressed by three merchants who, as surveyors, at the request of the plaintiffs, examined the coffee while it was still in store, and recommended an immediate sale at auction. On the part of the defendants, it was shown that the warehouse in question was one for general storage; that the guano had been stored in it for at least eight or ten years,

together with coffee, flour, tobacco, and other articles; that up to the time of this transaction no injury had ever been done to any of these articles, so far as was known or heard of, by guano; that coffee, in one of these warehouses, had been stored for more than two years, in an upper room, with guano immediately underneath—there being an open hatchway between the two stories—and had not been at all discolored, or affected in either taste or smell. It was also stated by some witnesses, that they had seen coffee discolored as was this coffee, when it had never been in the neighborhood of guano, and that they believed the change owing to the condition in which the coffee was shipped, and the action upon it of a humid atmosphere.

Captains of guano vessels were examined, who stated that they were in the habit of taking coffee with their other stores, on voyages from the Chincha Islands, and that they had never known it to be affected in color, taste, or smell, though the vessels were filled with guano. They all agreed in stating that, until this case was spoken of, they never heard of any instance in which it had been alleged or supposed that guano would discolor or injure coffee, and that they would, therefore, not have hesitated to bring them together in the same cargo. The coffee, in this case, was stored in a front room on the ground floor; and, while owned by Oelrichs & Lurman, guano was put, without any apprehension by the storekeeper, into the back room adjoining, with an open door or archway between the apartments. It was not injured, so far as known, during the first year of its storage. After the purchase by the plaintiffs, the door of communication between the apartments was tightly boarded up, and guano still kept on store in the back room. It appeared, also, that the room containing the coffee had not been opened more than two or three times during the storage; the storekeeper stating that it was customary to keep coffee on store on the lower floors, and not to ventilate the apartments containing it, unless specially so ordered by the owner of the coffee.

THE COURT instructed the jury that the defendants, as warehousemen, were liable, under their contract for storage, only for ordinary diligence, by which was intended, in law, that degree of diligence which prudent men ordinarily exercise in respect to their own property and business; and that, in order to entitle the plaintiffs to recover, the jury must find—First, that the coffee was, in fact, injured by the guano; and, secondly, that the defendants were wanting in ordinary diligence in storing the coffee and guano in the same warehouse, in the manner in which they were stored.

The verdict was for the defendants.